STATE, LATTA ET AL., PROSECUTORS, v. MAYOR AND COMMON COUNCIL OF HOBOKEN.

The act entitled "An act to provide for the draining of certain low lands lying in the city of Hoboken and the township of Weehawken," (*Pamph. L.* 1866, *p.* 941,) did not take from the common council of the city of Hoboken the power to alter and fix the grade of streets in the city delineated on the grade map mentioned in and confirmed by the second section of the act of 1866.

On *certiorari.*

This writ brings up an ordinance for the improvement of Adams street, from the northerly line of Third street to the northerly line of Seventh street, passed September 15th, 1885. This ordinance provides for the grading of the street, between the limits mentioned, to the highest established grade, the resetting of the curbs and relaying of the flagging.

The lands adjacent to said street and in that locality were part of the estate of John G. Coster, deceased. In 1860, the heirs of Coster caused a map of said lands to be made, entitled "Map of property situate at Hoboken, Hudson county, New Jersey, belonging to the estate of John G. Coster, deceased," laying out said tract into lots, blocks and streets, which map they filed in the Hudson county clerk's office, and since then have sold lots to several persons by reference to said map.

The whole of said tract was low marsh or meadow-land, the natural surface of which was below mean high tide. Adams street is one of the streets laid out and designated on said map. In 1866, an act entitled "An act to provide for the drainage of certain low lands lying in the city of Hoboken and the township of Weehawken," was passed, approved April 4th, 1866. *Pamph. L.* 1866, *p.* 941.

The grade map mentioned in the second section of said act was filed by the owners thereof in the city clerk's office of the city of Hoboken, May 24th, 1866.

The grade designated on said map is two feet above mean high tide, at street corners, and rises eight inches per hundred feet to the centre of blocks.

The map is entitled, "A grade map of property belonging to the estate of John G. Coster, deceased, situate at Hoboken, Hudson county, 1866; made by Robert C. Bacot and L. W. Post, civil engineers and surveyors." At the foot of this map a note was added in these words: "It is recommended (with a view to future raisings of grade) that all buildings of a permanent nature should be placed two feet six inches above the grades shown on this map."

The plans adopted by resolution of the mayor and council of the city for the improvement of Adams street, pursuant to the ordinance set out in the return to the writ, fix the grade of said street at four feet above mean high tide at street crossings, and at five feet six inches above mean high tide at the centre of blocks, which is two feet higher than the grade shown on the said Coster grade map.

Several houses have been built on the streets above named, to correspond with the grade shown on the Coster grade map.

Argued at November Term, 1885, before Justices DEPUE, VAN SYCKEL and DIXON.

For the prosecutor, *J. C. Besson.*

Contra, *James F. Minturn.*

Latta v. Hoboken.

The opinion of the court was delivered by

DEPUE, J. By the charter of the city, the common council has power to pass ordinances to make, lay out and improve all public streets, to regulate and govern the leveling, pitching and construction of streets, and also the power to grade, pave and remove obstructions in all streets that were or might become public streets or highways by dedication or otherwise. *Pamph. L.* 1885, *pp.* 464, 477, § 40; *p.* 6, § 56. The ordinance to grade and improve the street in question, and the resolution fixing the grade, were in compliance with the powers granted by the city charter.

The single question is whether these powers were withdrawn from the city authority, with respect to the lands in question, by the act of 1866. The second section of the act is the only part of it that is material to this controversy. It created the commissioners a corporation under the name of " commissioners to drain certain low lands lying in the city of Hoboken and in the township of Weehawken," and gave them power to reclaim and drain said lands in accordance, as nearly as practicable, with two certain maps made by Robert C. Bacot and Levi W. Post, dated February 1st, 1866, the one for sewerage and the other for grades of the lands of the Coster estate, which said maps were therein established and confirmed, with the monuments shown thereon. It also empowered the commissioners to construct, maintain, manage and use all dykes, dams, ditches, sluices, sluice-gates, and all other works, structures and machinery necessary, useful or convenient to reclaim and drain said low lands or any part thereof; to employ a surveyor, engineer and other agents; to make maps of the said low lands; to contract for the execution of the said works, and to do any act and thing necessary to complete and maintain a proper drainage of said low lands or any .part thereof. Subsequent sections gave the commissioners power to make assessments on the lands so drained for the expenses thereof, and to collect the same by the sale of lands on which assessments were laid; to condemn lands required for the execution of the works necessary for

the said improvement, and to borrow money and issue bonds therefor.

The authority conferred upon these commissioners was for the execution of a specified work—the drainage of low lands in the localities mentioned; and all the powers granted to them were subsidiary to this single purpose. That the legislative scheme was limited within that scope is apparent from the title. of the act, as well as from the enumeration of the powers and duties of the commissioners in the body of the act. It is true that the maps referred to in the act, and established and confirmed, had delineated upon them streets which were proposed as such, among which was Adams street, and that the confirmation of these maps was an adoption of those streets. But the recommendation annexed to the maps shows that it was not contemplated by the makers of them that they should be taken as an adoption of an established grade for the streets delineated, and the legislative adoption of the grade indicated on the maps was expressly of the grades of the lands according to which, as nearly as was practicable, the commissioners were to execute the work of drainage. Furthermore, the legislature withheld from the commissioners those governmental powers, which were already vested in the municipality, of opening and improving streets, incident to which is the power to fix and establish grades, and limited their duties to the execution of such works as were needful to effect and maintain suitable means to accomplish the draining of the lands within the scope of the legislative plan.

But if it be conceded that the act of 1866 was the establishment of the grades indicated on these maps, this act has not superseded the powers granted to the municipality to regulate and establish the grades of streets within the city. It has not done so expressly, and the provisions of the city charter on that subject are not so irreconcilable with the powers of the commissioners as that a repeal of the power by implication would be effected. In this view of the act of 1866, the utmost that could be said is that in case the city should exercise the powers granted by the charter in establishing a new

.grade of the streets, abutting owners would be entitled to recover the damages arising from the alteration of such grade pursuant to the act of 1858. *Rev., p.* 1009, § 70.

The ordinance under review was a legitimate exercise of the powers of the common council under the city charter, and in pursuance of the stipulation of counsel, this writ should be .dismissed without costs.